Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, January 11, 2010 2:15:51 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BILLY DON SHAW | ) | Case No. 09-219 |
| | ) | |
| Debtor. | ) | Chapter 13 |

## MEMORANDUM OPINION

Billy Don Shaw (the "Debtor") jointly owns a marital home with his non-filing spouse. Substantial equity exists in the home, the value of which the Chapter 13 trustee seeks to have paid into the Debtor's Chapter 13 plan under the "best interest of creditors test" embodied in 11 U.S.C. § 1325(a)(4). The Debtor asserts that a creditor of a single spouse cannot force a sale of a marital home under applicable West Virginia law; therefore, the equity in the Debtor's home is unavailable to the Chapter 13 trustee and unsecured creditors of his bankruptcy estate. On that basis, the Debtor also claims his marital home as exempt.

The "best interest of creditors test" of § 1325(a)(4) requires that unsecured creditors in a Chapter 13 case be paid at least as much through confirmation of a proposed Chapter 13 plan as they would receive if the debtor's case were liquidated under Chapter 7 of the Bankruptcy Code:

> (a) . . . the court shall confirm a plan if--
> . . .
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

§ 1325(a)(4).

This test "is focused on what value a creditor would receive if the collateral were to be liquidated as of the effective date of the plan"; therefore, "the proposed 'disposition or use' is a

1

hypothetical liquidation." *In re Delbrugge*, 347 B.R. 536, 539 (Bankr. N.D.W. Va. 2006). In determining the Chapter 7 liquidation value, it is appropriate to deduct from the value of the debtor's assets the hypothetical Chapter 7 "trustee's fees, the costs of sale, exemptions, and capital gain taxes." *Id*. In this case, the Debtor contends that his interest in his marital home cannot be hypothetically liquidated on the basis that either: (A) his interest is exempt, or (B) it cannot be sold under West Virginia law to the prejudice of his non-filing spouse.

**A.     The Exemption**

The Debtor contends that he is entitled to an exemption in his jointly owned real property on the basis that the Supreme Court of Appeals of West Virginia has indicated that the interest of a non-debtor spouse in jointly held property can never be reached by the creditors of the other spouse.[1] The Chapter 13 trustee and First Community Bank timely objected to the Debtor's claim of exemption.

A claim of exemption in property prohibits that property from becoming property of the bankruptcy estate. 11 U.S.C. § 522(b) ("[A]n individual may exempt from property of the estate . . . ."). Because West Virginia has opted out of the list of federal exemptions provided in § 522(d) of the Bankruptcy Code, W. Va. Code § 38-10-4, exemptions available to West Virginia debtors are listed in 11 U.S.C. § 522(b)(3):

> (A) . . . [A]ny property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition . . . .
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law . . . .

*Id.*

Regarding subsection (A) of § 522(b)(3), West Virginia exemptions for debtors in bankruptcy are enumerated in W. Va. Code § 38-10-4. That statue allows a single debtor to, among other things,

---

[1] The Debtor's claimed exemption on Amended Schedule C (Document No. 62) specifies that the exemption is claimed under W. Va. Code § 36-1-20, which provides for the creation of an estate in land as joint tenants with a right of survivorship, and the Debtor specified that the exemption was being claimed under 11 U.S.C. § 522(b)(3)(B) inasmuch as West Virginia law prohibits a spouse from being partitioned out of a marital home.

2

exempt a $25,000 interest in real property that the debtor uses as a residence. No express statutory provision exists that exempts an entire parcel of real property from execution by a debtor's creditors based on its classification as being jointly owned.

Regarding subsection (B) of § 522(b)(3), the Debtor contends that his marital home cannot be partitioned and sold to pay his individual creditors because, under West Virginia law, jointly owned property cannot be sold to the prejudice of a non-debtor spouse; thus, applicable nonbankruptcy law exempts his martial home from process. The Supreme Court of Appeals, however, has already held in *Vincent v. Gustke*, 336 S.E.2d 33 (W. Va. 1985), that a judgment creditor may seize and sell the debtor-spouse's ½ interest in jointly owned real property (without seeking a partition of that property). According to the Court, the lien enforcement statute, W. Va. Code § 38-3-9,[2] "does not authorize a court to inquire into the proceedings to enforce judgment liens[; t]here is nothing to prevent a judgment lien's immediate enforcement." *Id.* at 35. If the Debtor's undivided ½ interest in the real property can be reached to satisfy a state court judgment in West Virginia, it cannot be successfully claimed as exempt under 11 U.S.C. § 522(b)(3)(B). *Ragsdale v. Genesco, Inc.*, 674 F.2d 277, 279 (4th Cir. 1982).

Consequently, no explicit state or federal exemption exists under 11 U.S.C. § 522(b)(3)(A) that would prevent the Debtor's interest in jointly held real property from becoming property of his bankruptcy estate, and, under § 522(b)(3)(B), applicable non-bankruptcy law does not prevent the Debtor's undivided ½ interest in his martial home from passing to the estate. *E.g.*, *In re Oswald*, 90 B.R. 218, 221-22 (Bankr. N.D.W. Va. 1988) (concluding that no exemption existed that would prevent an undivided ½ interest in jointly owned real property from passing to the bankruptcy estate

---

[2] The statue provides:

> The lien of a judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice [magistrate] from which it issued showing by the return thereon that no property could be found from which such execution could be made . . . .

W. Va. Code § 38-3-9.

3

under West Virginia law);[3] *aff'd* No. 88-00083 (N.D.W. Va. Dec. 21, 1990).  Thus, while the Debtor is entitled to exempt a $25,000 interest in real property he uses as his residence, the entire marital home he owns jointly with his non-debtor spouse is not exempt under 11 U.S.C. § 522(b)(3)(B), because the property is not exempt from process under West Virginia law, which is applicable in this case.

**B.     The Hypothetical Sale**

Notwithstanding the legal principal that his undivided ½ interest in his jointly-held real property transfers to the bankruptcy estate on the filing of his petition, the Debtor argues that no hypothetical sale of that ½ interest is possible under applicable nonbankruptcy law on the basis that no partition may be had to the prejudice of his non-filing spouse; thus, the Chapter 13 trustee's liquidation analysis for his real property under 11 U.S.C. § 1325(a)(4) must be zero.

Section 363(h) of the Bankruptcy Code allows a trustee to sell both "the estate's interest in property, and the interest of any co-owner in that property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant,[4] or tenancy

---

[3]   In *Oswald*, the bankruptcy court concluded that the debtor could not claim an exemption in his jointly owned property on the basis that insufficient prejudice existed to the non-debtor joint tenant to prohibit the sale under 11 U.S.C. § 363(h).  In doing so, the *Oswald* court conflated the law governing exemptions with the law governing bankruptcy sales. In this court's view, however, the inquiry is bifurcated: the initial question is whether the property can be claimed as exempt; if not, then an analysis must be made as to whether a sale of that property is possible under 11 U.S.C. § 363(h).  In the event that a sale is not possible based on the prejudice to the joint tenant, that does not remove the property from the bankruptcy estate in the same manner as an exemption; rather, all that has occurred is that the estate has an interest in property that may not be sold – in its entirety – by the trustee.  The inability to sell an entire parcel of jointly owned property under § 363(h) based on prejudice to the joint tenant in no way removes the debtor's interest in the jointly owned property from the bankruptcy estate.

[4]   Although "joint tenancy with a right of survivorship" is not specifically enumerated in § 363(h) as a co-owned estate subject to sale by a trustee, if the trustee were to execute the bankruptcy estate's interest against the debtor's interest in the property, the joint tenancy with a right of survivorship would be terminated and a tenancy in common would be created.  *E.g., Herring v. Carroll*, 300 S.E.2d 629, 633 (W. Va. 1983)("'The act of one joint tenant in severing his interest in the property by alienation severs the joint tenancy to that extent, so that if there were but two tenants, the joint tenancy is terminated.'") (citation omitted).  The right of survivorship in West Virginia is not indestructible.  *See id.*  To the extent that a "joint tenancy

4

by the entirety, only if – (1) partition in kind of such property among the estate and such co-owners is impractical; (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of co-owners; (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and (4) such property is not used in the production [of energy]."

In the Debtor's view, this court need not conduct an inquiry under § 363(h) because applicable non-bankruptcy law already restricts the estate's interest in the Debtor's jointly held real property in that, under West Virginia law, creditors of a single spouse cannot partition and sell a marital home to the prejudice of the "innocent" spouse. *E.g.*, *Harris v. Crowder*, 322 S.E.2d 854 (W. Va. 1984) (holding that when creditors seek to subject a jointly-owned family home to the satisfaction of outstanding judgments, the court must consider the issue of prejudice to the non-debtor spouse).

In *Harris*, the Supreme Court of Appeals of West Virginia addressed a certified question from the Circuit Court of Kanawha County: "Can a judgment lien creditor maintain a creditor's action to sell jointly-owned property where his judgment is against only one of the joint property owners." *Id.* at 856. The Court answered the question by stating:

> It would appear that the unrelenting logic of property law demands that we hold that when a husband and wife hold property as joint tenants a creditor of either one of them alone may enforce his judgment lien against the debtor spouse's interest in the property by bringing an action to partition, and where partition cannot be accomplished in kind it may be accomplished by sale.
>
> . . . .
>
> We are not disposed . . . to allow the inexorable logic of property law to be entirely dispositive of the issue before us. When a creditor seeks to sell a family's home to satisfy the debts of one spouse alone, a whole new dimension is given to the equitable provision in our partition statute that excludes partition when prejudice occurs to another tenant. . . .
>
> Nonetheless, we hold that creditors of one joint tenant may reach that joint tenant's interest and force partition either in kind or by sale, but only if "the interest of the other person or persons so entitled will not be prejudiced thereby." Obviously, the interest of a non-debtor spouse in jointly-held property can never be reached by the

---

with right of survivorship" is not specifically included as a co-owned estate that a trustee may sell, § 363(h) specifically authorizes the trustee to execute against a tenancy in common.

5

creditors of the other spouse.

*Id.* at 858, 860-61; *see also* W. Va. Code § 37-4-3 ("When partition cannot be conveniently made . . . and the interest of the other person or persons so entitled will not be prejudiced thereby, the court . . . may order such sale . . . and make distribution of the proceeds of sale, according to the respective rights of those entitled . . . .").

The Court's opinion in *Harris* was based on the explicit statutory language of W. Va. Code § 37-4-3 that allows a court of equity to take into consideration the possible prejudice to a joint tenant in a partition action. In a subsequent case, *Vincent v. Gustke*, 336 S.E.2d 33 (W. Va. 1985), the Court addressed the related question of whether a judgment creditor may seek to sell the debtor's undivided ½ interest in the jointly owned property without seeking a partition of the property itself. Although the Court permitted execution of the creditor's judgment lien on the debtor's undivided ½ interest in the jointly-held property, the Court further stated:

> We are at a loss to know what stranger would want to buy a family residence to be shared with the debtor's wife and children, and on which the stranger would owe half the taxes and half the maintenance. Yet if the hospital insists on selling Dr. Vincent's one-half interest in his residence, and the purchaser is willing to take the residence subject to Mrs. Vincent's right to live there with her husband and her children, then the hospital is within its rights. The sale of such an asset would hardly be calculated to bring a very high price and Mrs. Vincent would appear to be the most likely bidder.
>
> [W]e hold that if the hospital proceeds under its general complaint simply to force a sale of Dr. Vincent's undivided interest in the property held jointly with his wife, W. Va. Code 38-3-9 does not require the circuit court to hold a hearing because such a sale will not prejudice Mrs. Vincent's rights to live in the house as her marital home. But it follows, then, that if the hospital seeks not only to sell Dr. Vincent's interest but also seeks to subject the jointly-held property to partition by sale, the circuit court must inquire into whether partition will prejudice Mrs. Vincent's rights in the premises and whether the partition comports with the rules we laid down in *Harris v. Crowder* . . . .

*Id.* at 35-36.

Accordingly, based on W. Va. Code §§ 38-3-9 and 37-4-3, as interpreted by the Supreme Court of Appeals of West Virginia in *Harris* and *Vincent*, a judgment creditor is free to execute the judgment lien against the debtor's undivided ½ interest in jointly held property, become a co-tenant

6

in place of the debtor, but may only seek to partition that property by sale so long as the non-debtor spouse is not prejudiced by the proposed partition. The partition action's inquiry into the co-tenant's prejudice does not change depending on whether a judgment creditor or the co-tenant is seeking the partition. *See, e.g.*, *Laurita v. Estate of Moran*, 607 S.E.2d 506 (W. Va. 2004) (inquiring into whether a proposed division of property by the moving co-tenant would prejudice the other co-tenants).

In the Debtor's view, this restriction on partition of real property based on the prejudice to the non-debtor spouse is a characteristic of the property that passes to the bankruptcy estate, and, therefore, the estate is bound by it.

As defined by statute, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). What constitutes property of the estate is to be interpreted broadly. *United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983). "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). Thus, unless some federal interest requires a different result, property interests in bankruptcy are to be analyzed under applicable state law to "reduce uncertainty, discourage forum shopping, and to prevent a party from receiving a windfall merely by reasons of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law, since such property interests are created and defined by state law."). Consequently, once a property interest has passed to the estate, it is generally subject to the same limitations imposed by applicable non-bankruptcy law. *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."). In short, in the absence of a contrary federal interest, if a debtor's ability to partition and sell jointly-owned property is limited under state law, so too is the trustee's ability.

Here, however, a federal interest is present that requires a result different from that provided for by West Virginia law. Like W. Va. Code § 37-4-3, Bankruptcy Code § 363(h)(3) also considers the potential consequences of a partition of co-owned property to the non-debtor co-owner. Under

7

the Bankruptcy Code, however, the inquiry is into whether the benefit to the estate *outweighs* the detriment to the co-owner – not whether the co-owner will be *prejudiced*, as that term has been interpreted by the Supreme Court of Appeals of West Virginia.

Federal preemption is generally stated to entail three inquiries. As stated by the Court in *Pennsylvania v. Nelson*, 350 U.S. 497, 502 (1956), the first inquiry is whether "the scheme of federal regulation [is] so pervasive as to make reasonable inference that Congress left no room for the States to supplement it." The second is whether the statute "touches a field in which the federal interest is so dominant that the federal system [must] be assumed to preclude enforcement of state laws on the same subject." *Id.* at 504. Third, the court must determine whether the enforcement of a state statute "presents a serious danger of conflict with the administration of the federal program." *Id.* at 505. In considering the validity of state laws touching the same subject as the federal law, the court "has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Nat'l City Bank v. Turnbaugh*, 463 F.3d 325, 330 (4th Cir. 2006) ("Preemption 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'") (citation omitted), *cert. denied*, 550 U.S. 913 (2007).

In § 363(h), Congress has provided a uniform law on the subject of bankruptcies, authorizing a trustee to sell certain types of co-owned property provided the conditions set forth in that subsection are satisfied. Nowhere in § 363(h) is there any requirement that the sale of the co-owned property be authorized under applicable non-bankruptcy law. In those instances where applicable non-bankruptcy law would erect a barrier to the trustee's sale, courts have determined that the applicable non-bankruptcy law is preempted. *E.g.*, *In re Whitman*, No. 06-11780, 2007 U.S. Dist. LEXIS 56830 at *2-3 (D. Mass. Aug. 1, 2007) (holding that § 363(h) preempts applicable state law that would otherwise prohibit the sale allowed for in § 363(h)); *In re Hidler*, 192 B.R. 790, 795 (Bankr. D. Me. 1996) ("Under § 363(h), the trustee may sell entireties property without the consent of the nondebtor spouse, regardless of state law [requiring a spouse's consent to a sale]."); *In re Lang*, 191 B.R. 268, 273 (Bankr. D.P.R. 1995) ("[T]he court finds that the requirement of the non-debtor spouses consent prior to the disposition of community property where the other files a

bankruptcy petition is preempted as it is contrary to federal bankruptcy law."); *see also In re Marks*, No. 00-524, 2001 U.S. Dist. LEXIS 11478 at *8 (E.D. Pa. June 14, 2001) (recognizing that the federal interest stated in § 363(h) "will sometimes require a different result in such situations than state interests might require").

Accordingly, in the context of this bankruptcy proceeding, the standards for a trustee to effect a sale of co-owned property in West Virginia are set forth in 11 U.S.C. § 363(h), and to the extent that W. Va. Code § 37-4-3 applies a more strict standard for determining the detriment to the non-debtor co-owner in determining if the partition sale should move forward, that standard is preempted by the Bankruptcy Code inasmuch as it is conflicting, contrary to, irreconcilable, inconsistent, a curtailment of, and/or an interference to the operation of § 363(h).

Concerning the four pre-requisites for a sale under § 363(h), the court notes that the Debtor's real property subject to the hypothetical sale under § 1325(a)(4) consists of a house on ½ acre of ground and serves as a single family residence. As noted in *In re Addario*, 53 B.R. 335, 338 (Bankr. D. Mass. 1985), "[w]here property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds."

Second, as recognized by the Supreme Court of Appeals of West Virginia in *Vincent*, 336 S.E.2d at 35-36, the sale of the Debtor's undivided ½ interest in a single family residence has a minimal value and the amount realized from such a sale by the estate would be significantly less than a sale of the residence free of the interests of any co-owner.

Before addressing the third element of weighing the benefits and detriments of the hypothetical sale, the court also notes that the fourth pre-requisite – that the property is not used in the production of energy – is also satisfied.

Regarding the requirement of 11 U.S.C. § 363(h)(3) that "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners," the court has not had the opportunity to conduct an evidentiary hearing on the detriment to the Debtor's spouse should the family home be hypothetically sold under § 363(h). Such a determination "is fact intensive, and courts generally have considered non-economic, emotional or psychological detriment in addition to any economic detriment that may be suffered by the co-owner." *Price v. Harris (In re Harris)*, 155 B.R. 948, 950 (Bankr. E.D. Va. 1993). For example,

9

the Court of Appeals for the Second Circuit has opined that relevant considerations include "actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home." *In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989).

Therefore, having defined the applicable standard by which the court will evaluate a potential sale of the Debtor's jointly-owned real property for purposes of applying the "best interest of the creditors test" of 11 U.S.C. § 1324(a)(4), the court will set an evidentiary hearing at which time it will take evidence on any factor relevant to determining whether a sale of the property is appropriate under 11 U.S.C. § 363(h)(3).